**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT B., A MINOR, BY AND THROUGH HIS PARENTS, BRUCE B. AND JANE B. and BRUCE B. AND JANE B., ADULTS INDIVIDUALLY, AND ON THEIR OWN BEHALF | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 04-cv-2069 |
| THE WEST CHESTER AREA SCHOOL DISTRICT | : | |

**MEMORANDUM**

**Baylson, J.** **September 27, 2005**

## I. Background

This case arises under the Individuals with Disabilities Education Act of 1997 ("IDEA"), 20 U.S.C. § 1400 *et seq.* (2005), on appeal from a decision of the Special Education Due Process Appeals Panel of the Commonwealth of Pennsylvania ("Appeals Panel"). The underlying action was commenced on behalf of Robert B. by his parents, Bruce B. and Jane B. ("Plaintiffs").

Robert B. is a fifteen year old disabled child (d.o.b. January 18, 1990) who resides in the West Chester Area School District. Robert is eligible for special education and related services by virtue of being diagnosed with specific learning disabilities in math, reading, and written language. For the 2001-02 and 2002-03 school years, West Chester Area School District (the "District") financially supported Robert's placement at the private Stratford Friends School. For the 2002-03 school year, Plaintiffs and the District entered into a settlement agreement regarding tuition reimbursement. The agreement included terms regarding the completion of a reevaluation of Robert by the District in spring 2003. This reevaluation was conducted and an evaluation

report was issued on April 30, 2003; that report continued to find Robert eligible for special education services. The settlement agreement was extended by the parties, who continued to discuss plans for Robert's 2003-04 school year, with the Plaintiffs and the District in disagreement over private school placement versus district programs and classes. The parties were unable to reach a subsequent agreement, and the Plaintiffs enrolled Robert at the Hilltop Preparatory School for the 2003-04 academic year.

Plaintiffs subsequently requested a due process hearing, which was convened on November 12, 2003 and completed on December 29, 2003. Plaintiffs claimed that the District had not fulfilled its statutory obligations under the IDEA and that they should be reimbursed for Robert's private school tuition for the 2003-04 school year. The Hearing Officer issued a decision on January 11, 2004. The Hearing Officer found that Defendant provided Robert with a free appropriate public education ("FAPE") because the Individualized Education Program ("IEP") it developed for Robert met statutory procedural and substantive muster and was reasonably calculated to provide Robert with meaningful educational progress, and, as a result, Robert was not entitled to the requested tuition reimbursement. Plaintiffs filed exceptions on January 27, 2004. They contended that the Hearing Officer erred in determining that the District offered Robert a FAPE, and in failing to order tuition reimbursement for the 2003-04 school year. The Appeals Panel affirmed the Hearing Officer's decision in its entirety, and Plaintiffs appealed to this Court.

Presently before the Court are cross-motions for decision on the administrative record, or, in the alternative, summary judgment. After review of the administrative record and applicable law, the Court makes the following decision on the issues presented. For the reasons that follow,

the Court will affirm the decision of the Appeals Panel and deny Plaintiffs the relief they seek.

**II. Background – IDEA**

The key to the entire IDEA framework is the overarching requirement that all the activities of the state be directed towards ensuring that "[a] free appropriate public education is available to all children with disabilities." 20 U.S.C. § 1412(a)(1). In *Board of Education v. Rowley*, 458 U.S. 176, 188–89 (1982), the Supreme Court held that a "free appropriate public education" consisted of "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." Federal funding under the IDEA is contingent on state compliance with its array of substantive and procedural requirements. *Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 370 (3d Cir. 2005).

The main vehicle for provision of a FAPE under the IDEA is the Individualized Education Program ("IEP"). *Honig v. Doe*, 484 U.S. 305 (1988), *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 265 (3d Cir. 2003). The IEP is a written plan, created by a multi-disciplinary team, delineating a package of special educational and related services designed to meet the unique needs of a disabled child. *Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 526 (3d Cir. 1995). The IEP must point toward the child's actual educational needs. It does so by including summaries of the child's abilities and present levels of educational performance, outlines of measurable educational goals, specification of educational services to be provided, and appropriate evaluation procedures and schedules for determining whether instructional objectives are being achieved. 20 U.S.C. § 1414(d)(1)(A); 34 C.F.R § 300.347; *Pardini v. Allegheny Intermediate Unit*, 2005 U.S. App. LEXIS 18750 at *10-11 (3d Cir. Aug.

29, 2005); *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988). For an IEP to be appropriate, it must offer a child progress in all relevant domains (behavioral, social, emotional) via "meaningful educational benefit[s]." *S.H.*, 336 F.3d at 265; *M.C. v. Central Regional Sch. Dist.*, 81 F.3d 389, 394 (3d Cir. 1996).

The IDEA requires every public school system receiving federal funds to develop and implement an IEP for each disabled child in its jurisdiction. The IEP team is required to review each child's IEP at least annually to determine whether the child is reaching the stated goals, and the IEP team is to revise the IEP to address lack of progress and make necessary changes arising from reevaluation of the child and parental input. 20 U.S.C. § 1414(d)(4)(A); 34 C.F.R. § 300.343(c)(2); *S.H.*, 336 F.3d at 265.[1]

**III. Standard for Reviewing State Administrative Decisions**

Any party aggrieved by the decision made by a Hearing Officer under the IDEA has the right to bring a civil action in a District Court of the United States, and the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2). Thus, the reviewing court should not adopt the traditional summary judgment standard of review. *See, e.g., Bucks County Dep't of Mental Health/Mental Retardation v. Barbara DeMora*, 227 F.Supp. 2d 426 (E.D. Pa. 2002).

In IDEA cases, district courts are required to give "due weight" to the factual findings in state administrative proceedings. *Rowley*, 458 U.S. at 206. In this context, "due weight"

[1] Importantly, the IDEA imposes numerous safeguards to ensure proper development of the IEP and to protect the rights of parents and guardians to challenge the IEP, including the right to bring this due process challenge in federal court. *See Rowley*, 458 U.S. at 205-07.

constitutes a "modified de novo review." *S.H., supra*; *see also Blount v. Lancaster-Lebanon Intermediate Unit*, No. 03-579, 2003 U.S. Dist. LEXIS 21639 (E.D. Pa. Nov. 12, 2003). The Third Circuit has held that under this standard of review, a federal district court reviewing the administrative fact finder in the first instance is required to defer to his or her factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record. Where the district court does not accept the state administrative fact findings, it must explain why "to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." *S.H., supra*. As observed in *Blount*,

> The *S.H.* case also instructs District Courts to fully explain reasons for departing from a state decision, and encourages a thorough review of the evidence. The development of a modified de novo standard, rather than simply adopting the more common do novo standard, is a further attempt to elucidate the statement in Rowley, in which the Supreme Court held that courts are required to consider the administrative findings in order to ensure that District Courts refrain from imposing their own notions of educational policy on the states.

2003 LEXIS 21639 at *10 (citing *Rowley*, 458 U.S. at 206 ("The very importance which Congress has attached to compliance . . . would be frustrated if a court were permitted to simply set state decisions at nought.")). The Court applies this standard here.

**IV. Review of State Administrative Decisions**

A. <u>The Hearing Officer's Decision</u>

The Hearing Officer, Linda J. Stengle, submitted a nine-page decision in which she made 26 separate findings of fact, discussed her concept of the legal requirements for tuition reimbursement, and analyzed the situation to reach a result which denied Plaintiffs claim.

Among her conclusions, the Hearing Officer found the following:

> (1) The Evaluation Report tendered by the Defendant upon reevaluation of Robert in 2003 adequately informed the IEP team and enabled it to develop an educational program for the student;
> (2) The parents participated in development of the IEP and recommended changes which were adopted in total;
> (3) The IEP addresses Robert's attention issues via Specially Designed Instruction;
> (4) The IEP is reasonable calculated to afford the student with meaningful educational progress in the least restrictive environment; and
> (5) The IEP can be appropriately implemented at the Pierce Middle School.

Hr'g Off. Dec., *inter alia.*

The Hearing Officer characterized the single issue before her as resolving the question of whether the parents are "entitled to tuition reimbursement for the student's placement at Hilltop Preparatory Academy for the current school year." *Id.* at 4. In her discussion, the Hearing Officer stated the requirement that, in analyzing whether she should award reimbursement for a unilateral placement of a student at a private school, the first question to be considered is whether the district has shown that it has offered the student a FAPE. Citing *Polk*, *supra*, the Hearing Officer observed that a satisfactory IEP is one that provides "significant learning" and confers "meaningful benefit." *Id.* Applying that standard, the Hearing Officer concluded that

> the District's IEP in this case [is] only minimally flawed and to be reasonably calculated to afford the student with meaningful educational progress. It includes a clear description of present levels of educational performance, measurable goals and objectives, and detailed program modification and specially designed instruction descriptions. It addresses the student's strengths and needs. The IEP anticipates that the student many need some assistance making a change from private to public school and includes suitable transition strategies. It adequately addressed what appear to be minimal attention issues. . . . Given the constraints the district operated under by not having any direct educational experience with the child, the IEP is sound.

*Id.* at 5.

In response to the parent's arguments, the Hearing Officer stressed that members of the IEP team testified that they did not require any additional information to develop the IEP, concluding "the record simply doesn't support that more information was necessary." *Id.* The Hearing Officer "accorded [ ] relatively low weight" to the opinion of Plaintiff's expert because "he did only minimal testing and observed the public school program without the student in it," and he "did not have information about the student's lack of progress at Stratford Friends during the previous year." *Id.* Because the Hearing Officer concluded that the district passed the first prong of the test for tuition reimbursement, she denied the parents' request for tuition reimbursement.

B. <u>The Appeals Panel Decision</u>

Robert's parents filed a 20-page list of Exceptions to the Hearing Officer's Report on January 27, 2004. The parents asserted Hearing Officer error in determining that the district had offered Robert a FAPE. On February 19, 2004, the three-person Appeals Panel issued a unanimous, eleven-page decision in which it affirmed the decision of the Hearing Officer in its entirety.

The Appeals Panel reached several conclusions. First, it found that the district's reevaluation "was proper in that it sought to take the evaluation information available, conduct assessments pertinent to Robert's potential performance in the district's curriculum and from those sources created an IEP reflecting the evaluation sources. Thus, the reevaluation was proper and appropriate." App. Panel Dec. at 7. Second, the Appeals Panel found that the IEP "clearly addressed each and every need identified for Robert." *Id.* at 8. Regarding asserted procedural flaws, the Appeals Panel concluded that "minor procedural flaws such as the absence of a regular

education teacher on the IEP team do not render the IEP inappropriate unless they also result in denial of an appropriate education. In this case, there is no evidence that Robert has been denied some necessary service as a result of the alleged procedural flaw." *Id.* Likewise, the Appeals Panel rejected the asserted substantive flaws, concluding that the IEP was nonetheless "reasonably calculated to provide meaningful benefit." *Id.* at 7-8.

The Appeals Panel also chose not to disturb the Hearing Officer's decision to afford little weight to the parents' expert witness, because it saw "nothing in the record as a whole or the evidence that allows us to reach a contrary conclusion." *Id.* at 10 (citing *Scott P.*, 62 F.2d at 520).

**V. Discussion of the Merits**

The trigger of eligibility for reimbursement of private placement tuition is the denial of FAPE. *See Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993) (ruling that parents are entitled to reimbursement only if a federal court concludes that the public placement offered by the District violated the IDEA); 34 C.F.R. § 300.403(c) (providing for reimbursement only where the district had "not made FAPE available to the child in a timely manner prior to [private placement]"). In conducting a review of state IDEA proceedings this Court must ask both (1) whether the district complied with the procedural requirements of the IDEA, and (2) whether the district's substantive determinations are "reasonably calculated" to enable the child to receive "meaningful educational benefits." *S.H.*, 336 F.3d at 265 (citing *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 247 (3d Cir. 1999)).[2]

[2] In the Third Circuit, "[i]n administrative and judicial proceedings, the school district bears the burden of proving the appropriateness of the IEP it has proposed." *Scott P.*, 62 F.3d at 533.

A. The Evaluation Report

Before turning to the IEP itself, Plaintiffs contend that the Evaluation Report offered by the district as part of the reevaluation leading to the challenged IEP was procedurally and substantively inadequate because it did not include the results of new testing based on a variety of particular testing mechanisms.[3] This contention fails for two major reasons.

First, where a *reevaluation* is concerned, the fact that the District did not conduct anew particular types of standardized testing is not error assuming that the District already had the information it needed to establish Robert's needs in each relevant area. The IDEA clearly distinguishes between an initial evaluation and a reevaluation. *See* 34 C.F.R. § 300.536. In the event of a reevaluation (of which the 2003 Evaluation Report was clearly a part), the IDEA and its implementing regulations do not require the District to perform anew the full scope of testing properly included in a child's initial evaluation. Rather, in reevaluating the child, the IEP team is to *review all existing evaluation data*, including "current classroom-based assessments and observations," and information provided by the parents. 20 U.S.C. § 1414(c)(1); 34 C.F.R. § 300.533(a). From this review, the IEP team is supposed to identify what additional data – *if any* – are needed to determine, among other things, "the present levels of performance and educational needs of the child;" and then to decide "whether any additions or modifications to the special education and related services are needed to enable the child to meet the measurable annual goals set out in the [IEP] of the child. . . ." 20 U.S.C. § 1414(c)(1).

Plaintiffs do not indicate, and the Court does not find, any requirement in the IDEA that a

[3] Specifically, Plaintiffs contend that the reevaluation did not contain sufficient, particularized new testing in the following areas: psychology; written expression; reading level; mathematics; occupational therapy; behavior; and working memory.

reevaluation must mimic the depth and breadth of an initial evaluation. The Court agrees with the Appeals Board that reevaluations may be properly limited under the statute to a review of records, observations, curriculum-based measures and other non-standardized assessments when the child's broad needs have already been established and when there is no evidence that the child's needs have changed substantially. Here, the total information available to the District was "sufficiently comprehensive to identify all of the child's special education and related service needs." 34 C.F.R. § 300.532(h). The District had access to normative assessments conducted within the year before the District's reevaluation by the private school and by the parents' independent educational evaluations – indeed, the District incorporated these evaluations into its reevaluation. Def. Ex. S-1 at 2-3; S-3 at 2; S-4 at 5. Where Robert had well-known and clearly-established needs in certain areas, additional standardized testing (as opposed to curriculum-based measures) in those particular areas was not required, and would have had little additional value in planning Robert's new IEP.[4]

Second, the Plaintiffs signed a Settlement Agreement in which they agreed to the specific content of the reevaluation at issue, accepting the agreement as "full and lawful notice of the reevaluation and of their rights concerning it." Indeed, the Plaintiffs even availed themselves of an opportunity to modify the original settlement terms, and did so without addressing any concerns related to the agreed-upon reevaluation. While no provision in the Settlement Agreement represented that the District's future Evaluation Report would be agreed to constitute

---

[4] Notably, even the parents' own expert witness testified that he had sufficient information from the previous evaluations and the reevaluation to form opinions (*i.e.*, without additional testing) about present educational levels, needs, and the appropriateness of the District's proffered program and placement.

an appropriate evaluation, *see D.R. v. East Brunswick Br. Of Educ.*, 109 F.3d 896 (3d Cir. 1997), clearly the parents' subsequent challenge based on the content of the reevaluation is weakened by the fact that the parents previously consented to exactly such content.

Plaintiffs after-the-fact contention that nothing in the Settlement Agreement "limited the testing which would later be necessary when the testing was actually administered," Plaintiffs' Mem. in Opposition to Motion for Disposition on the Admin. Record at 2 (emphasis in original), is unconvincing. The Court does not find evidence in the record to suggest that any circumstances pertaining to Robert had changed in the period between the signing of the Settlement Agreement and the creation of the Evaluation Report that would have made "necessary" any additional testing beyond that explicitly agreed to by Plaintiffs. Absent any such change in circumstances, Plaintiffs' contention has no actual import here.

Given these points, the Court concludes that the District's Evaluation Report was neither procedurally nor substantively inappropriate under the IDEA where the relevant reevaluation took the evaluation information available and conducted additional assessments pertinent to Robert's potential performance in the District's curriculum. The Court finds no reason to depart from the Appeals Panel's findings in this regard.

B. The IEP

Next, Plaintiffs advance several claims regarding the propriety of Robert's 2003 IEP.[5] The Court will address each of Plaintiffs' primary contentions seriatum.

(1) Plaintiffs first contend that the IEP's "Present Educational Levels do not provide a meaningful description of Robert's current functioning in Reading, Math, Written Expression or identifies Robert's strengths and needs." Mem. in Support of Plaintiffs' Motion for Judgment on the Admin. Record at 15 (hereinafter "Plantiffs' Motion"). However, the IEP here contains both

---

[5] Federal regulations pertaining to the content of an IEP are specific and clear:

> § 300.347 Content of IEP.
> (a) General. The IEP for each child with a disability must include –
> (A) A statement of the child's present levels of educational performance, including-
> (i) How the child's disability affects the child's involvement and progress in the general curriculum (i.e., the same curriculum as non-disabled children)
> . . .
> (2) A statement of measurable annual goals, including benchmarks or short-term objective, related to-
> (i) Meeting the child's needs that result from the child's disability to enable the child to be involved in and progress in the general curriculum (i.e., the same curriculum as for nondisabled children)...
> (ii) Meeting each of the child's other educational needs that result from the child's disability;
> (3) A statement of the special education and related services and supplementary aids and services to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child–
> (i) To advance appropriately toward attaining the annual goals;
> (ii) To be involved and progress in the general curriculum in accordance with paragraph (a)(1) of this section and to participate in extracurricular and other nonacademic activities; and
> (iii) To be educated and participate with other children with disabilities and nondisabled children in the activities described in this section . . .

34 C.F.R. § 300.347.

(1) specific paragraphs labeled "Reading," "Math," and "Written Expressions," which described Robert's educational levels in terms of particular skills and (2) numerous Goals and Objectives which further highlight Robert's particular areas of skills and need. *See* Def. Ex. S-4 at 5-11, *inter alia*. Given this, the Court agrees with the Appeals Panel that the District has established that the IEP contains specific information about the particular skills Robert has mastered and those he has not.

(2) Plaintiffs next contend that "the IEP fails to fully and adequately describe Robert's OT and Behavioral needs" and fails to include a "Behavior Management Plan." Plaintiffs' Motion at 15, 17. However, the District has demonstrated that the IEP contains items of specifically-designed instruction that address Robert's inattention – the only behavior problem consistently identified for Robert.[6] *See* Def. Ex. S-3 at 2-4 (describing Robert's only behavioral problem as his "inability to stay focused in class"); S-4 at 11-13 (Goal 5)). The IDEA does not require that the District go beyond identifying needs and goals related to behavior (i.e., to create a separate behavior intervention plan); it merely requires that "in the case of a child whose behavior impedes his or her learning or that of others, the IEP team must "*consider*, where appropriate, positive behavior interventions and supports, and other strategies, to address that behavior." 20 U.S.C. § 1414(d)(3)(B)(i) (emphasis added). This Court infers from the inclusion of specifically-designed instruction items aimed at addressing the explicitly-identified inattention issue that the District properly "considered," and implemented, appropriate strategies to address

---

[6] Items of specially-designed instruction offered to address attention and task focus include "clear and concise directions," rephrasing directions prior to starting tasks, "visual and verbal cues to remain on task and increase time on task behavior," interspersal of "hands on or multisensory activities to ensure attention to task," and provision of "notetaking strategies and assistance." Def. Ex. S-4 at 12-13.

Robert's behavioral needs.[7]

(3) Plaintiffs next contend that "[t]he Goals in Robert's IEP are inadequate." Plaintiffs' Motion at 15. Plaintiffs make several claims in this regard:

(a) Plaintiffs first claim that no Goals were created to address Robert's attentional issues. As discussed above, the District properly addressed Robert's needs related to inattention.

(b) Plaintiffs next claim that the IEP's Reading Goal was inappropriate because it only envisioned half-year growth instead of full-year's growth. The record belies this contention. The IEP would have had Robert progress a full year in all areas, from the early to mid-Third Grade to Fourth Grade instructional levels. *See* Transcript of Initial Hearing at 201-202; Def. Ex. S-4 at 8-9.

(c) Plaintiffs next claim that the Reading Goal did not address all areas of Robert's Reading needs. To the contrary, the IEP addressed the areas of identified need, including, specifically, Reading needs related to phonetics (*see* Def. Ex. S-4 at 7 (Goal 1)), fluency (*see* Def. Ex. S-4 at 8 (Goal 2, objective 3)), and comprehension (*see* Def. Ex. S-4 at 9 (Goal 3)).

(d) Plaintiffs next claim that the IEP's Goals failed to provide for improvement related to the Written Expression level. However, the Court finds that the IEP did seek to improve Written Expression performance. *Compare* Def. Ex. S-4 at 5 with Def. Ex. S-4 at 7.

(e) Finally, Plaintiffs claim that no Goals were provided for listening comprehension. The District correctly indicates, however, that the record supports its decision that such a Goal

---

[7] The District's decision not to "place any limit on class size" as a strategy designed to address Robert's behavioral needs (*see* Plaintiffs' Motion at 16) does not demonstrate that the District failed to address those needs; rather, it simply reflects a choice among available strategies made in favor of specially-designed instruction techniques.

was unnecessary as an additional area of discrete need. *See* Trans. at 196-97.

(4) Plaintiffs next contend that the IEP failed to include a "research-based reading program." Plaintiffs' Motion at 16 (emphasis in original). However, Plaintiffs offer no support whatsoever for the assertion that such is required; they point to nothing aside from a "body of research" (without citation) favoring research-based reading programs. There is no requirement in the IDEA for use of any particular Reading programs above others, nor is there any precedent for finding an IEP inappropriate for failing to exclusively use a "research-based" Reading program. As discussed above, the IEP here devotes extensive attention to addressing Robert's Reading needs. Although the IEP does not necessarily name specific Reading "programs" in its delineation of techniques, the Court is satisfied that the District has appropriately provided for Robert in this area.

(5) Plaintiffs next contend that the IEP does not include certain Related Services; these include individual time with a reading specialist, weekly psychological counseling, and "organizational training." Plaintiffs' Motion at 16. Regarding the reading specialist, there is no evidence in the administrative record that the District does not have the capability to and would provide the services of such a specialist in the context of the IEP. Likewise, there is no evidence in the record that Robert requires psychological counseling. Finally, the Court has previously addressed the District's satisfactory response to Robert's organizational and attention needs.

(6) Plaintiffs next contend that "no meaningful Transition Plan was offered to Robert for the proposed move" to a District school. Plaintiffs' Motion at 17. Contrary to Plaintiffs' implication, there is no requirement in the IDEA for such a plan in this case. The IDEA only requires a "transition plan" for an impending transition from school to post-school (i.e., adult)

activities, not for transfers between schools. 34 C.F.R. § 300.29(a)(1). Furthermore, the IEP does include in the "specially-designed instruction" a plan to ease the transition of Robert to his public school placement in advance of his first day of attendance. Def. Ex. S-4 at 13.

(7) Finally, Plaintiffs contend that no regular education teacher was present at the IEP meeting. The District does not dispute that IDEA regulations require that a regular education teacher be present at the IEP meeting. Here, it appears from the record that Mr. Dewitt, who was listed on the IEP as a regular education teacher, was actually the District's special education liaison (and said position does not involve regular classroom education). The Court agrees with Plaintiffs that this is, therefore, a procedural flaw, but a minor one. However, the Court finds no evidence in the record that Robert has been denied any necessary service (and, thus, a FAPE) as a result of this flaw.

C. Additional Evidence Contained in Dr. Hess' Deposition

The Court will touch briefly on what the Plaintiffs suggest is "additional evidence" contained in the deposition of Dr. Richard Hess, the school psychologist witness whose testimony was originally offered by the Plaintiffs to the Hearing Officer. Dr. Hess testified before the Hearing Officer that the educational program proposed by the District was inappropriate. The Hearing Officer accorded "relatively low weight" to Dr. Hess' testimony because, in her view, he (1) personally performed limited testing of Robert; (2) did not observe the public school program without Robert present; and (3) did not possess complete information about Robert's academic progress during the previous year. Hr'g Off. Dec. at 5. The Appeals Panel affirmed this determination, finding no evidence to allow it to reach a contrary conclusion. App. Panel Dec. at 10. Plaintiffs subsequently took a deposition from Dr. Hess on December 8,

2004. They contend that the deposition contains evidence that compels a different conclusion regarding the weight accorded to Dr. Hess' testimony, and ask this Court to consider it for that purpose.

The Court must determine the admissibility of additional evidence. Admission is not a matter of right; rather, the Court must determine whether the proffered evidence is "relevant, noncumulative, and useful." This is a question squarely reserved to the "particularized discretion" of the Court. *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995); *see also Scott P.*, 62 F.3d at 527.

The Court has carefully reviewed Dr. Hess's brief deposition. In it, Plaintiffs' counsel essentially makes a cursory attempt to "rehabilitate" the testimony of Dr. Hess, by offering him an opportunity to counter the Hearing Officer's conclusions. Given this opportunity, Dr. Hess posits in his deposition that (1) he felt additional testing would have been invasive; (2) he felt observing Robert in the School District's placement would have been disruptive; and (3) he received knowledge of Robert's progress by other means (namely, by interviewing Robert's parents). These brief explanations do not provide any basis to contradict the Hearing Officer's original concerns with Dr. Hess' testimony – namely, that Dr. Hess lacked personal knowledge of Robert in a classroom setting; they are merely further explanations as to why Dr. Hess felt he did not need such knowledge. Moreover, Dr. Hess offers no new evidence or conclusions based on anything that occurred after the IEP was delivered. Finally, Dr. Hess has acquired no new credentials that would render him any more qualified to assess or comment upon particular issues.

The Court concludes that Dr. Hess's deposition testimony merely repeats or embellishes

matters already adequately established of record in the administrative proceedings. Critically, it offers no additional insight into the "reasonableness of the school district's original decision." *Susan N.*, 70 F.3d at 762. The Court, in its discretion, will therefore exclude the additional evidence. *See, e.g., Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994) (upholding the exclusion of additional evidence that served only to repeat or embellish matters already adequately established of record in the administrative proceedings under review); *see also e.g., Town of Burlington v. Dep't of Educ., Comm. of Mass.*, 736 F.2d 773, 791 (1st Cir. 1984), *aff'd on other grounds*, 471 U.S. 359 (1985) ("A practicable approach, we believe, is that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial . . . The claim of credibility should not be an "open sesame" for additional evidence.").

* * *

In summary, the Court has reviewed each and every objection to the District's Evaluation Report and IEP raised by Plaintiffs. The Court finds that the District has demonstrated that the Evaluation Report was both procedurally and substantively appropriate. The Court further finds that the District has demonstrated the IEP was appropriate. Here, the IEP clearly addressed each and every need identified for Robert, and the District's substantive determinations contained in the IEP were "reasonably calculated" to enable Robert to receive "meaningful educational benefits." *S.H.*, 336 F.3d at 265. Given this, and taking any minor procedural flaws into account, the Court concludes that Defendant offered Robert a FAPE for the year at issue. Because eligibility for tuition reimbursement is predicated on denial of a FAPE, the Court's analysis ends here. This matter is resolved in favor of Defendant and against Plaintiffs on all claims. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT B., A MINOR, BY AND THROUGH HIS PARENTS, BRUCE B. AND JANE B. and BRUCE B. AND JANE B., ADULTS INDIVIDUALLY, AND ON THEIR OWN BEHALF | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 04-cv-2069 |
| THE WEST CHESTER AREA SCHOOL DISTRICT | : | |

**ORDER**

AND NOW, this 2th day of September, 2005, after careful and independent consideration of the parties' cross-motions for disposition on the administrative record, it is hereby ORDERED that:

1. Plaintiff's Motion for Disposition on the Administrative Record (Docket No. 17) is DENIED.
2. Defendant's Motion for Disposition on the Administrative Record (Docket No. 15) is GRANTED.
3. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff and mark this case as closed.

BY THE COURT:

/s MICHAEL M. BAYLSON
Michael M. Baylson, U.S.D.J.

A:\Robert B. v. West Chester Area Sch. Dist., 04-2069 Memo & Order.wpd